IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| REGINA DRISKILL | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 3:18-CV-102 |
| | ) | |
| vs. | ) | |
| | ) | Judges Greer/Poplin |
| REGIONS BANK, | ) | |
| d/b/a REGIONS MORTGAGE | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |
| | ) | |

## AMENDED COMPLAINT

COMES the Plaintiff, REGINA DRISKILL (hereinafter "Driskill" or "Plaintiff"), and amends her Complaint as allowed by the Order of this Honorable Court issued on September 17, 2019. [Doc. 36] Plaintiff sues the Defendant, REGIONS BANK, d/b/a REGIONS MORTGAGE (hereinafter "Regions" or "Defendant"), and respectfully shows this Honorable Court as follows:

**I.   PRELIMINARY STATEMENT**

This action arises from Regions' actions against Driskill in violation of:

A.   The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605, specifically §2605(e) (duty to respond to borrower inquiries); §2605(l)(3)(B) (force-placed insurance); 12 U.S.C. §2605(m) (unreasonable charges for force-placed insurance); and RESPA implementing regulation 12 C.F.R. § 1024.39(a) (live contact); and,

-1-

B. Tennessee common law by breach of contract including breach of the implied duty of good faith and fair dealing.

## II. PARTIES

1. Plaintiff is a citizen and resident of Knox County, Tennessee.

2. Defendant is a foreign corporation duly organized and existing under the laws of the State of Alabama, with its principal place of business at 1900 5th Avenue North, Birmingham, Alabama. (Exhibit 1, attached hereto.) It has been duly served in this matter. [Doc. 10]

## III. JURISDICTION AND VENUE

3. This Court has original jurisdiction of this matter based on questions of federal law, as per 28 U.S.C. § 1331.

4. The parties are residents of different states and this Court has jurisdiction of this matter due to complete diversity of the parties, as per 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000.

5. This Court has supplemental jurisdiction over Plaintiff's claim made under Tennessee common law, per 28 U.S.C. §1367.

6. All conduct, transactions and occurrences in this matter took place in Knox County, Tennessee and therefore venue is properly with this Court, as per 28 U.S.C. §1391(a)(1) and (b)(2).

## IV. FACTS

### A. GENERAL BACKGROUND

7. Driskill receives Social Security disability benefits as a result of cognitive issues. Driskill also cared for an adult disabled son.

8. On September 1, 2011, Driskill filed a Chapter 13 Bankruptcy petition in the Eastern District of Tennessee. [Case 3:11-bk-34102-SHB, Doc. 114]. (Exhibit 2, Trustee's Final Report, attached hereto.) Driskill had experienced medical problems and a car accident that caused financial difficulties for her at that time.

**B.   YEAR 2012**

9. During the time frame at issue in this lawsuit, there were two periods when Ms. Driskill did not have homeowner's insurance, as required by her mortgage holder and servicer, Regions. One period was for the day of May 3, 2012 to May 4, 2012. This was due to a mistake made by Ms. Driskill in obtaining a new policy on the subsequent day instead of the same day the previous coverage ended.

10. Regions obtained forced placed insurance for that one day gap and charged Ms. Driskill $4.00 for the date of May 3 to May 4, 2012. (Exhibit 3, May 23, 2012 Regions letter attached hereto; Exhibit 4, Regions Mortgage Letter, January 21, 2015, Page 2, attached hereto.)

11. There was also a gap in homeowner's insurance from August 7, 2012 until January 15, 2013.

12. Regions obtained forced placed insurance for the period of August 1, 2012 until July 31, 2013 and charged Ms. Driskill $597.33 each month for that time period. (Exhibit 5, Regions letter December 20, 2012, attached hereto.)

13. In year 2012, Regions improperly charged Driskill for forced-placed insurance for the period from August 1, 2012 to August 6, 2012, a period when Driskill had homeowner's insurance in place. (Exhibit 5)

-1-

14. Based on Regions' previous placement of forced-placed insurance for one day in May of 2012, $4.00 per day was needed for forced-placed insurance. However, just three months later, Regions charged Driskill $321.35 per month for forced-placed insurance, or $10.37 per day. One month of the force-placed insurance added up to more than Driskill's entire normal monthly mortgage and escrow payment of $275.98.

15. In its December 20, 2012, Regions sent Driskill's attorney a letter stating that she needed to pay $3,166.46 to bring her account current. (Exhibit 5)

16. The calculation presented in the Regions December 20, 2012 letter included an overcharge for 6 days (August 1, 2012 to August 6, 2012) at $10.37, totaling $62.22 (Regions' charge for forced-placed insurance) (Exhibit 5). This overcharge happened because Regions did not give Driskill credit for the first six days of August, when she had insurance.

17. Driskill made payments in the total amount of $1,257.97 between July 3, 2012 and December 31, 2012. (Exhibit 6, list of payments credited by Regions, as filed by Regions in the bankruptcy case, attached hereto).

18. On December 31, 2012, Driskill's attorney, John P. Newton, wrote to Regions and requested an updated arrearage number, so Driskill could pay that promptly and make the account current. (Exhibit 7, Letter from Attorney Newton to Regions, December 31, 2012, attached hereto.)

### B. YEAR 2013

19. On February 4, 2013, Mr. Newton wrote to Regions to inquire if it had removed the force-placed insurance from Driskill's account as she had made payments bringing the account current. (Exhibit 8, letter from Attorney Newton to Regions, February

-2-

Case 3:18-cv-00102-JRG-DCP   Document 37   Filed 09/18/19   Page 4 of 17   PageID #: 105

4, 2013, attached hereto.)

20. On February 20, 2013, Mr. Newton again wrote to Regions to inform it that it had not credited Driskill with all her payments made between July 3, 2012 and January 31, 2013, in the total amount of $4,257.97. (Exhibit 9, letter from Attorney Newton to Regions, attached hereto).

21. On March 6, 2013, Driskill relayed to Mr. Newton that Darlene Malone of Regions had told her not to send any payments because she was arranging for a new payment for Driskill that would include escrow arrearage. (Exhibit 10, letter from Driskill to Newton, attached hereto).

22. On June 13, 2013, Regions wrote to Driskill and told her that her new payment amount would be $275.98 per month starting on August 1, 2013 based upon an escrow review, unless "that date has already passed, [then] the new payment amount is effective November 1, 2012."[1] (Exhibit 11, letter from Regions to Attorney Mayer of June 13, 2013, attached hereto).

23. Also on June 13, 2013, Regions issued a new payment book to Driskill, showing that she had an escrow account established with a federally related mortgage loan. (Exhibit 12, Payment Book, attached hereto). It stated her escrow account had an overage of 1,348.41. The Payment Book listed the monthly mortgage payments as $275.98 beginning August 1, 2013.

---

[1] Since November 1, 2012 was already 8 months in the past by the date of the letter, it can be assumed that Regions meant the new payment would be in effect on November 1, 2013.

24. Regions never acknowledged Driskill's purchase of homeowner's insurance in January of 2013, nor did it ever retroactively lower her monthly payments for the period she did have insurance, January 15, 2013 to July 31, 2013, while it simultaneously force-placed insurance on the house.

25. Regions overcharged Driskill $10.37 per day for the period from January 15, 2013 to July 31, 2013 because it continued, and has continued to this day, to fail to credit Driskill's purchase of insurance on January 15, 2013 and reduce her payments for that period. Region's total overcharge for 197 days amounted to $2,042.13 that it claimed Driskill was in arrears, when she did not owe these monies.

26. Driskill continued to try to get an answer from Regions about correcting her account. She made three payments in the remaining months of 2013 - $300.00, $280.82 and $75.00. (Exhibit 6) Driskill knew she had an overage of $1,348.41 in her account but could not get Regions to give her information on her correct arrearage or escrow account.

### C. YEAR 2014

27. In the beginning of 2014, Driskill made payments of $561.64 and $100, but still could not get Regions to give her information on her account. (Exhibit 6)

28. On August 25, 2014, Driskill went in person to see Katie Stone, Mortgage Banking employee for Regions. Ms. Stone sent an internal memo to Thelma Foster of Regions, stating:

> I know it has been a while since we discussed this account. The borrower has come in my office again today and stated that she has not received anything from Regions regarding the correct balance or an updated statement with this payment applied. Then she got a notice about Regions Mortgage making an appearance in Bankruptcy Court. She is really upset and confused. I have attached the notice that she just

got in the mail. And I've advised her to contact her bankruptcy attorney. She also brought me in documentation that her grant funds [illegible] this Friday, August 29th. And she intends to go to the bank branch that day to [illegible] payment. However she needs an accurate balance amount. Can you please send that to me?[2]

(Exhibit 13, letter from Katie Stone to Thelma Foster, Regions internal communication, August 25, 2014, attached hereto.)

29. Regions did not send Driskill an accurate balance account.

30. On October 23, 2014, Driskill received a letter from Regions stating that she needed to pay $7,432.22 to reinstate her loan, with the following amounts specified:

| | | |
|---|---|---|
| A. | Payments for April, 2013 to October, 2014 | $ 6,529.02 |
| B. | Attorney fees | $ 850.00 |
| C. | Attorney Costs | $ 176.80 |
| D. | Amount in Suspense | $ (122.80) |
| TOTAL | | $ 7,432.22 |

(Exhibit 14, letter from Shapiro and Kirsch, LLP, October 23, 2014, attached hereto).

31. In fact, Driskill's mortgage payments should have totaled no more than $5,243.62, if correctly calculated at $275.98 per month for nineteen months and if Driskill had made no payments. However, she had made payments of at least $1,317.36, according to Regions' own document. (Exhibit 6)

32. On November 3, 2014, Attorney Newton wrote to Regions' attorneys, Shapiro and Kirsch, LLP, giving a detailed explanation of why Regions had overcharged Driskill and how its Motion for Relief filed with the Bankruptcy Court was wrong. (Exhibit 15, letter from Newton to Shapiro and Kirsch, LLP, November 3, 2014, attached hereto.) Attorney

---

[2] Plaintiff's copies of these documents are very faint, so the attached exhibit is not easy to read.

Newton calculated that the arrearage amount due was $ 4,679.10, not $6,529.02 as listed in the October 23, 2014 letter from Regions . (See <u>Exhibit 14</u>.)[3]

33. Regions charged Driskill for force-placed insurance for the period from January 15, 2013 to July 31, 2013, a period when Driskill already had homeowner's insurance in place. (<u>Exhibit 15</u>)

34. In his letter, Attorney Newton specifically requested an accurate accounting from December, 2012 until the date of his letter, November, 2014. (<u>Exhibit 15</u>)

### D. <u>YEAR 2015</u>

35. On January 21, 2015, Regions sent Driskill a letter stating that she was in arrears for the amount of $2,389.32 for the months of April, May, June, and July, 2013. (<u>Exhibit 4</u>)[4] Regions stated that Driskill owed monthly payments of $597.33 for each of those months because it had paid for forced-placed insurance for those months. This was an increase of roughly 100% on Driskill's previous mortgage payment of $275.98.

36. Although it claimed in the calculations at the top of page 2 of the letter that Driskill was in arrears for the months of April, May, June and July, 2013 for amounts that included force-placed insurance, Regions acknowledged in bullet-point 6 of that same January 21, 2015 letter that Driskill had homeowner's insurance for those months, writing,"$1,070.00 - insurance premium disbursed from escrow on January 29, 2013, to

---

[3] Unfortunately, Plaintiff does not have the calculations referred to by Attorney Newton, attached to his letter. Attorney Newton's letter reflects that Plaintiff had made $564.52 of payments between August, 2013 and the date of his letter in November, 2013.

[4] Plaintiff has only page 2 of this letter.

-6-

American Reliable for policy #128000900002, effective January 15, 2013-2014." (Exhibit 4)

37. There had never been a need for forced-placed insurance in April, May, June and July, of 2013 because Driskill had homeowner's insurance in place.

38. On August 17, 2015, Attorney Newton again wrote Shapiro & Ingle, the new law firm representing Regions, and stated that Driskill was ready and able to bring the mortgage current once a reinstatement figure was determined and provided to Driskill. Mr. Newton included proof of insurance. (Exhibit 16, letter from Attorney Newton to Shapiro & Ingle, dated August 17, 2015, attached hereto.)

39. On September 4, 2015, Driskill wrote a letter to Regions, informing them that she is disabled and needed an advocate to assist her with explaining the situation to Regions. (Exhibit 17, Driskill handwritten letter to Regions of September 4, 2015, attached hereto)

40. On September 23, 2015, Mr. Newton again provided proof of insurance to Regions' attorney, W.S. Massa, III. (Exhibit 18, insurance coverage declaration pages, attached hereto).

### E.    YEAR 2016

41. On August 17, 2016, Judge Bauknight ordered Regions Bank to provide Driskill with a complete payment and escrow history within ten days of the date of the Court's Order. (Exhibit 19, Order entered 8/17/2016, attached hereto).

42. Regions did not comply with the Court's Order.

43. On November 29, 2016, Regions submitted a Form 4100R, Response to

-7-

Case 3:18-cv-00102-JRG-DCP    Document 37    Filed 09/18/19    Page 9 of 17    PageID #: 110

Notice of Final Cure Payment, stating that Driskill owed no money for pre-petition default and $13,029.66 for post-petition mortgage payments. (Exhibit 20, Form 4100R, attached hereto.)

44. On December 1, 2016, Regions filed a record for Loan 3006035640 showing Driskill made payments of $6,230.43 during the period of March 1, 2012 until May 1, 2014. [ Case 3:11-bk-34102-SHB]. (Exhibit 6)

### F. YEAR 2017

45. On January 23, 2017, Gwendolyn M. Kerney, Chapter 13 Trustee for the U.S. Bankruptcy Court of Eastern District of Tennessee, filed a Final Report and Account.(Exhibit 2) [ Case 3:11-bk-34102-SHB, Doc. 114]. In that report, Trustee Kerney reported that Regions had an allowed claim of $22,449.17 remaining on Driskill's mortgage.

46. On May 10, 2017, Regions wrote Driskill and said that they were "researching" her mortgage issues. (Exhibit 21, Regions letter dated May 10, 2017 to Driskill, attached hereto.) Driskill never received any results of the research.

47. On May 18, 2017, a notice of pending foreclosure sale set for June 23, 2017 was sent to Driskill, from a new attorney for Regions, J. Phillip Jones. (Exhibit 22, Jones letter to Driskill, May 18, 2017 attached hereto.)

48. On May 31, 2017, Driskill filed a complaint with the Consumer Financial Protection Bureau regarding Regions, who confirmed that Regions had been notified. (Exhibit 23, complaint acknowledgement, attached hereto.)

49. On June 9, 2017, Driskill was notified that Regions considered her mortgage

loan due starting on April 1, 2013 and all subsequent payments. (Exhibit 24, letter from Regions to Driskill of June 9, 2017, attached hereto). It gave her no credit for all the monies she had paid during that period. In the letter, Regions specifically denied that Driskill had previously provided proof of insurance coverage, despite the documents marked as Exhibit 15 and Exhibit 18 attached to this Amended Complaint.

50. In the letter of June 9, 2017, Regions stated that a foreclosure action had been initiated for the loan with a sale date scheduled for June 23, 2017.

51. On June 23, 2017, Driskill paid $4,000 to Regions in order to reinstate her loan and stop the foreclosure. (Exhibit 25, payment receipt, bottom of page)

52. Regions demanded that Driskill pay $650 per month until the account was current or a Loss Mitigation/Loan Modification was agreed upon. [Doc. 18-2, paragraph 9] Plaintiff's entire income was her disability check of approximately $725 per month, for food, mortgage, medical care, transportation, and any other needs.

53. Plaintiff made a payment of $650 on July 10, 2017. [Doc. 18-2, paragraph 9] (Exhibit 25, payment receipt for $650, top of page) However, Driskill would have no money for food if she continued paying $650 of her $725 monthly income to Regions.

54. In September, 2017, Regions began foreclosure proceedings again. [Doc. 18-2]

55. Regions sent Driskill a statement that showed a reinstatement amount required of $14,439.48, as of November 17, 2017. It also showed that she had paid only $2,464.24 year-to-date in 2017. (Exhibit 26, Mortgage Statement dated 11/1/2017)

56. Plaintiff was confused by Regions claim that she had paid only $2,464.24 in

-9-

Case 3:18-cv-00102-JRG-DCP   Document 37   Filed 09/18/19   Page 11 of 17   PageID #: 112

year 2017, since she had paid $4,000 on June 23, 2017 in order to reinstate her loan; and, she had paid $650.00 on July 7, 2017. (Exhibit 25) See also [Doc. 18-2, paragraph 11].)

### G.  YEAR 2018

57. On January 4, 2018, Driskill paid $290.37 as a mortgage payment to Regions. (Exhibit 27, attached hereto.)

58. Because Regions would still not provide her with a full accounting, or correct its errors, Driskill felt that making any additional payments would be futile.

59. On January 24, 2018, Driskill sent a letter to Regions authorizing her case manager, Denise Evertson, of the Knoxville Community Action Committee (hereinafter "CAC"), to discuss her situation with Regions. (Exhibit 28, Driskill to Regions, January 24, 2018 letter, attached hereto.) The CAC is a public agency helping the elderly and the poor. Driskill wanted Regions to discuss Driskill's situation with someone who had the cognitive ability to assist Driskill. Driskill's cognitive issues are disabling enough that she receives Social Security disability benefits.

60. On or about January 26, 2018, Driskill received a letter from Regions on mitigation options. (Exhibit 29, Letter from Regions regarding modification options dated January 25, 2018, attached hereto.) Since she had just sent a letter the day before asking Regions to allow Ms. Evertson to speak to them, she waited to receive confirmation that Regions would allow that to happen.

61. On or about January 27, 2018, Driskill received a notice of pending foreclosure from Regions Mortgage through its attorney, J. Phillip Jones. (Exhibit 30, letter from Regions's attorney dated January 26, 2018, attached hereto.)

62. On February 9, 2018, Driskill sent a dispute to Regions on the foreclosure

-10-

because she felt the amount owed was incorrect and she requested proof. She also explained further about her disability and requested assistance from Regions. (Exhibit 31, letter from Driskill to Regions dated February 9, 2018, attached hereto.)

63. Regions never responded to either Driskill's January 24, 2018 letter or her February 9, 2018 dispute letter.

64. On March 13, 2018, Driskill, by and through her attorney, filed the instant action, stating that she was able and willing to pay any proper amounts owed to Regions Bank. [Doc. 2, ¶ 10].

65. On March 14, 2018, Regions Bank was the highest bidder for the property at a foreclosure sale, in the amount of $41,524.31. (Exhibit 32, Substitute Trustee Deed, attached hereto.)

66. The property tax appraisal on Driskill's home is $99,100. (Exhibit 33, Knox County Property Assessor page for 3123 Joyce Avenue, attached hereto.) The house sold for less than half of its tax appraisal value. Market value would have been higher. Regions never notified Driskill of the distribution of any excess funds after paying its mortgage.

67. Regions was served Driskill's federal complaint on March 23, 2018. [Doc. 10]

**V.     CAUSES OF ACTION**

68. Paragraphs 1 through 67 are hereby realleged and incorporated in full by reference as though fully set forth herein.

**A.     The Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605**

### 1. §2605(e) - Duty to respond to borrower inquiries

69. Regions was the loan servicer of Driskill's loan as that term is defined under 12 U.S.C. 2605(i).

70. Driskill or her authorized agents made qualified written requests to Regions and/or its agents relating to the servicing of her loan under 12 U.S.C. §2605(e) on December 31, 2012; February 4, 2013; February 20, 2013; November 3, 2014; August 17, 2015; September 14, 2015; January 4, 2018; and February 9, 2018.

71. Regions failed to respond to most of the qualified written requests within thirty days as required by 12 U.S.C. 2605(e)(2).

72. Regions failed to make appropriate corrections to Driskill's account, failed to credit any late charges or penalties from its incorrect charges, and failed to transmit to Driskill written notification of such corrections, as required by 12 U.S.C. 2605(e)(2)(A).

73. Regions failed to undertake an investigation and to provide Driskill with a written explanation of its findings, as required by 12 U.S.C. 2605(e)(2)(B).

74. Regions' actions caused Driskill actual damages and engaged in a pattern and practice that allows additional damages, as provided in 12 U.S.C. 2605(f)(1)(A) and (B). Driskill also seeks her costs, including attorney fees, under 12 U.S.C. 2605(f)(3).

### 2. §2605(l)(3) and (l)(3)(B) (failure to confirm termination and to credit all force-placed insurance premiums to Driskill's account)

75. Regions failed to confirm the termination of force-placed insurance coverage within 15 days of the receipt of notification that Driskill had insurance in place from January 15, 2013 onward in violation of 12 U.S.C. §2605(l)(3).

76. Regions failed to provide a credit the overcharges for force-placed insurance

to Driskill's account, in violation of 12 U.S.C. §2605(l)(3)(B).

77. Regions' actions caused Driskill actual damages and it engaged in a pattern and practice that allows additional damages, as provided in 12 U.S.C. 2605(f)(1)(A) and (B). Driskill also seeks her costs, including attorney fees, under 12 U.S.C. 2605(f)(3).

### 3. 12 U.S.C. §2605(m) (unreasonable charges for force-placed insurance)

78. Regions failed to charge reasonable and *bona fide* charges for the forced-placed insurance during the period it was in place legitimately from August 7, 2012 to January 14, 2013. In May of 2013 Regions charged $4 for one day; three months later it charged $10.37 per day. This was a 150% increase per day and it was unreasonable and in violation of 12 U.S.C. §2605(m).

79. Regions' actions caused Driskill actual damages and engaged in a pattern and practice that allows additional damages, as provided in 12 U.S.C. 2605(f)(1)(A) and (b). Driskill also seeks her costs, including attorney fees, under 12 U.S.C. 2605(f)(3).

### 4. 12 C.F.R. § 1024.39(a) (live contact)

80. Regions failed to make live contact with Driskill on or before the 36th day after her first delinquent payment and on or before the 36th day after each missed payment after that, in violation of § 1024.39(a). Driskill tried repeatedly to find a live person to meet with, face-to-face, about her situation and was either rebuffed or ignored. The one live meeting that she had on August 25, 2014 did not result in the correction of her account.

81. Regions' actions caused Driskill actual damages and engaged in a pattern and practice that allows additional damages, as provided in 12 U.S.C. 2605(f)(1)(A) and (B). Driskill also seeks her costs, including attorney fees, under 12 U.S.C. 2605(f)(3).

-13-

### B. Breach of Contract and the Implied Duty of Good Faith and Fair Dealing

82. Regions had a duty to Driskill as a mortgagee, as evidenced by the mortgage contract between the parties. There was an enforceable contract between the parties

83. Driskill performed her end of the contract until it was obvious that she kept coming up with large sums of money and Regions was still unwilling to correct its records or even meet with Plaintiff and/or a representative of hers. Driskill's performance then became futile, as a direct result of Regions' breach, so Driskill stopped her performance.

84. Regions materially breached the contract by failing to follow federal law and by failing to properly credit Driskill's payments.

85. Regions violated the implied duty of good faith and fair dealing by failing to respond to Driskill and her agents' numerous letters, her in-person visit, and the U.S. District Bankruptcy Court's specific order. It failed at all times pertinent to provide an accurate and true accounting of Driskill's payments and escrow account status.

86. Regions' actions directly caused financial and intangible damage to Driskill in the form of inconvenience, humiliation at being foreclosed upon and the publication of same in local news media, attorney fees, costs of litigation, and the implications of the loss of her home. Driskill is elderly and disabled and now will be put out of her home. Driskill seeks to be placed in the same position as though Regions had not breached the contract, so she can resume her payments at a reasonable rate she can afford, minus the forced-place insurance, the unnecessary attorney fees, costs, and foreclosure charges.

## VI. PRAYER FOR RELIEF

87. Paragraphs 1 through 86 are hereby realleged and incorporated in full by reference as though fully set forth herein.

88. As a result of the conduct and actions of Regions alleged herein, Plaintiff seeks money damages in such amount as to be awarded by a jury for the violation of the statutory law; compensatory damages and restitution so as to be put back in the same position as she would be without Regions' breach of contract. Plaintiff seeks all damages as allowed by law, whether general, nominal, incidental or consequential, pre- and post-judgment interest, attorney fees as allowed by statute, expenses and for such other and further relief the Court deems just and proper.

Respectfully submitted this the 18th day of September, 2019.

/s/ Katherine A. Young

Katherine A. Young, BPR No. 017178
YOUNG LAW OFFICE, P.C.
6700 Baum Drive, Suite 7
Knoxville, Tennessee 37919
Telephone (865) 474-1284
Facsimile (615) 296-0379
Katherine@younglawknoxville.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ Katherine A. Young

-15-

Case 3:18-cv-00102-JRG-DCP   Document 37   Filed 09/18/19   Page 17 of 17   PageID #: 118