UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| REGINA DRISKILL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18–CV–102 |
| | ) |
| REGIONS BANK, | ) |
| | ) |
| Defendant. | ) |

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Region Bank's Motion for Summary Judgment. [Doc. 59]. Defendant contemporaneously filed a Memorandum of Law and Statement of Undisputed Material Facts. [Docs. 60–61]. Plaintiff Regina Driskill, responding pro se, filed a Response to the Motion, [Doc. 64], a Response to the Statement of Undisputed Material Facts, [Doc. 66], and a Supplement containing numerous documents in support of her responses, [Doc. 63].

In filing the Motion for Summary Judgment, Defendant seeks dismissal of all claims brought by Plaintiff under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and a claim for common law breach of contract. The Court has meticulously reviewed the record in this case, especially Plaintiff's response to Defendant's Statement of Undisputed Material Facts, Plaintiff's Supplement, and Plaintiff's payment history. Having thoroughly evaluated this case, the Motion is GRANTED in part and DENIED in part.

**I. Procedural History**

Plaintiff, through counsel, filed the original Complaint in this case on March 13, 2018. [Doc. 2]. This Complaint brought claims of breach of contract, wrongful foreclosure, and negligent

1

infliction of emotional distress. [Doc. 2, PageID 5–6]. On June 26, 2018, Plaintiff's attorney filed a Motion to Withdraw, and the Magistrate Judge granted that Motion on July 13, 2018. [Docs. 16, 20]. Between the filing and granting of that Motion, Defendant filed a Motion to Dismiss or, in the alternative, to Abstain because Plaintiff had previously filed another lawsuit in state court. [Doc. 18]. The Court stayed this case pending the resolution of the state court matter, and that stay was lifted on September 17, 2019, after Plaintiff filed a voluntary non-suit in state court. [Doc. 29, 36].

The next day, on September 18, 2019, Plaintiff, through new counsel, filed an Amended Complaint. [Doc. 37]. In the Amended Complaint, she brought claims under RESPA and a state common law claim for breach of contract. [*Id.*]. Almost a year later, Plaintiff's new counsel filed a Motion to Withdraw, [Docs. 53, 57], which the Magistrate Judge granted, [Doc. 58]. The Magistrate Judge told Plaintiff that she needed to retain new counsel or proceed pro se. [*Id.*] After Plaintiff's attorney withdrew, Defendant filed the pending Motion for Summary Judgment. [Doc. 59]. Plaintiff responded pro se. [Doc. 64].

## II. Factual Background

The relationship between Plaintiff and Defendant and its predecessors started in 1999. On April 9, 1999, Plaintiff and First American National Bank ("First American") entered into a promissory note for $40,000.00 so that Plaintiff could purchase real property located at 3123 Joyce Avenue, Knoxville, Tennessee 37921 ("Property"). [Docs. 62–1, 62–2]. Plaintiff and First American also agreed to a deed of trust secured by the Property. [Doc. 62–2]. Through a series of mergers and acquisitions, Regions Bank came into possession of the note and deed of trust. [Doc. 62, PageID 297].

Plaintiff's initial monthly payment for principal and interest was $221.83 plus an amount for escrow items, like taxes and insurance. [Doc. 62–1, PageID 305]. Under the deed of trust,

payments would be applied in the following order: (1) prepayment charges, (2) amounts payable to escrow, (3) interest, (4) principal, and (5) late charges. [Doc. 62–2, PageID 310]. The Parties modified the loan on July 15, 2010, so that Plaintiff's principal and interest payment became $96.76. [Doc. 62–4, PageID 323]. According to Defendant, this modification did not affect Plaintiff's total monthly payment; instead, it reduced her principal and interest payment and the rest of the monthly payment went to escrow for taxes and insurance. [Declaration of Regions Vice President, Steven Purser, Doc. 62, PageID 298; Loan Payment History, Doc. 61–3].

In September of 2011, Plaintiff filed for Chapter 13 Bankruptcy. Plaintiff was current on her mortgage when she went into bankruptcy, and Plaintiff continued sending her payment to Defendant instead of the United States Trustee. [Doc. 62–5, PageID 330]. Although she was current on her payment when she began bankruptcy, she quickly fell behind. [Doc. 62–3, PageID 317].

According to Defendant's documentation, in addition to her issues making timely payments, Plaintiff switched her insurance multiple times causing disbursements from her escrow account. [Doc. 62–3]. The documents supporting Defendant's position show that on March 20, 2012, Defendant made a significant disbursement of $1,374.00 to Kemper Insurance from Plaintiff's escrow account. [*Id.* at PageID 317, Line 68]. This large payment created a balance of -$734.53 in her account, and she had not yet made payments for January or February of that year. [*Id.* at Lines 67–69]. Then, on April 2, 2012, Plaintiff made a payment that paid for the January 2012 payment and made the balance in her escrow account -$537.40. [*Id.* at Line 69]. Then, her Kemper Insurance was terminated on May 3, 2012, and insurance with Travelers Insurance began on May 4, 2012. [Doc. 62, PageID 299]. The Travelers Insurance cost $2,418.00, which was disbursed from her escrow account. [Doc. 62–3, PageID 317, Line 70]. Because the

3

escrow account was already at -$537.40, her escrow balance became -$2,955.40 after the disbursement. [*Id.*]. In addition to canceling and obtaining new insurance, because the Kemper Insurance policy was canceled on May 3 and the Travelers Insurance started on May 4, Defendant force-placed insurance for one day, from May 3 to May 4, to cover the lapse. [Doc. 62, PageID 299; Doc. 62–3, PageID 317, Line 71]. Defendant force-placed insurance from Assurant Specialty Property Insurance for $4. [Doc. 62, PageID 299; Doc. 62–3, PageID 317, Line 71]. This $4 charge created a balance of -$2,955.40 as of May 17, 2012. [*Id.*]. At the start of 2013, Plaintiff had not paid the principal and interest bills from June 2012 forward and her escrow balance was -$3,251.46, and by July of 2013, her escrow balance was -$2,122.05 after making some payments that Defendant applied to the principal, interest, and escrow. [*Id.* at PageID 318, Lines 76–78, 84]. All of this information comes from the loan summary provided by Defendant and the declaration of Defendant's vice president.

Plaintiff disputes the amount that she owes on her mortgage vigorously. Contrary to the documents used to support Defendant's position filed by Defendant, Plaintiff has submitted documents created by Defendant that reflect different balances in her escrow account. An internet reprint of her Escrow Account projection shows that the actual balance in her escrow account as of June 13, 2013, was $2,383.08. [Doc. 63, PageID 360]. Further, Plaintiff filed a copy of a payment book with her Amended Complaint that also shows that as of June 13, 2013, her actual balance in escrow was $2,383.08. [Doc. 37–12, PageID 142].[1] The next page of the payment book shows the she was running a large deficit in her escrow account from at least August of 2012 to May 2013, when the escrow balance was -$2,122.05, but then her balance jumped to positive $1,882.51 in June 2013. [*Id.* at PageID 143].

---

[1] Although Plaintiff does not cite to some documents in her response, the Court may consider them pursuant to Federal Rule of Civil Procedure 26(c)(3).

4

Defendant does not explain the discrepancy between the loan payment document and the payment book filed by Plaintiff, and Plaintiff argues that her payments were not applied correctly. [Doc. 66, PageID 444]. Considering the application of payments was defined under the contract, there appears to be a dispute of fact about how the payments were actually applied and whether Defendant applied them properly.

Plaintiff sought clarification of how much she owed Defendant on numerous occasions, and these attempts led to her RESPA claims. [*See generally* Amended Complaint, Doc. 37]. According to a letter from her bankruptcy attorney to Defendant, she needed to know the exact number that she owed because an agency planned to bring her account current for her. [Doc. 37–16, PageID 150]. On January 26, 2018, Defendant initiated foreclosure proceedings, and it purchased the property at the foreclosure sale. [Doc. 62, PageID 302].

### III. Claims

Plaintiff has disputed the application of the payments to her account for years, and her claims arise out of her efforts to ensure that payments were applied correctly. She claims that Defendant violated RESPA numerous times and brings four different types of RESPA claims to remedy the violations. First, Plaintiff claims that she sent qualified written requests to Defendant on December 31, 2012, February 4, 2013, February 20, 2013, November 3, 2014, August 17, 2015, September 14, 2015, January 4, 2018, and February 9, 2018. [Doc. 37, PageID 115]. Plaintiff alleges that Defendant did not respond to the requests within 30 days in violation of 12 U.S.C. § 2605(e)(2). [*Id.*]. Second, Plaintiff alleges that Defendant failed to confirm termination of force-placed insurance within 15 days of being notified that she had insurance and failed to provide a credit to her account in violation of 12 U.S.C. § 2605(l)(3). [*Id.* at PageID 115–16]. Next, Plaintiff alleges that Defendant overcharged for force-placed insurance from August 7, 2012 to January 14,

5

2013, in violation of 12 U.S.C. § 2605(m). [*Id.* at PageID 116]. Fourth, Plaintiff alleges that Defendant failed to make live contact within 36 days after each missed payment in violation of 12 C.F.R. § 1024.39(a). [*Id.*]. Separate from the RESPA claims, Plaintiff alleges that Defendant breached their contract and breached the implied duty of good faith and fair dealing. [*Id.* at PageID 117]. The Court will address each in turn.

**IV. Standard**

A court grants a motion for summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 499 (6th Cir. 2006). An issue is genuine if, when evaluating the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it affects the outcome of the case based on applicable substantive law. *Id.* Last, all facts and inferences are viewed in the light most favorable to the nonmoving party. *Max Arnold & Sons, LLC*, 452 F.3d at 499.

**V. Analysis**

  a. <u>Defendant's Motion as to Plaintiff's failure to respond claims pursuant to 12 U.S.C. § 2605(e) is GRANTED in part and DENIED in part.</u>

Plaintiff alleges that Defendant did not respond after receiving qualified written requests ("QWRs") on December 31, 2012, February 4, 2013, February 20, 2013, November 3, 2014, August 17, 2015, September 14, 2015, January 4, 2018, and February 9, 2018, in violation of 12

6

U.S.C. § 2605(e). [Doc. 37, PageID 115]. Section 2605(e) requires a loan servicer to acknowledge the receipt of a "a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan" within 5 days. Then, within 30 days, the loan servicer must:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e).

Plaintiff alleges that Defendant failed to respond to the QWRs, failed to make appropriate corrections, failed to investigate, and failed to respond with a written explanation of its findings. [Doc. 37, PageID 115]. Plaintiff alleges that she incurred "actual damages" and alleges that Defendant "engaged in a pattern and practice that allows additional damages, as provided in 12 U.S.C. 2605(f)(1)(A) and(B)." [*Id.*]. Plaintiff "also seeks her costs, including attorney fees, under 12 U.S.C. 2605(f)(3)." [*Id.*].

Defendant argues that the various claims brought for failing to respond should be dismissed for three reasons. First, Defendant argues that claims for the letters sent on December 31, 2012, February 4, 2013, February 20, 2013, and November 3, 2014 should be dismissed because the statute of limitations has run. [Doc. 60, PageID 276–77]. The statute of limitations for RESPA § 2605 claims is three years, meaning that Plaintiff needed to bring any claim within three years of the violation. 12 U.S.C. § 2614; *Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034, 1041 (E.D. Mich. 2013). Plaintiff filed her original Complaint on March 13, 2018, [Doc. 2], and her Amended Complaint, which raised RESPA claims for the first time, on September 18, 2019, [Doc. 37]. Giving Plaintiff every inference, if the RESPA claims related back to the filing of the first Complaint on March 13, 2018, any claim accruing before March 13, 2015 must be dismissed. Therefore, claims accruing from the December 31, 2012, February 4, 2013, February 20, 2013, and November 3, 2014 letters, are untimely.

Having found four of the letters to be untimely, Defendant next argues that two of the letters, the letters from September 14, 2015, and January 4, 2018, are not QWRs under § 2605(e)(1)(B). [Doc. 60, PageID 277]. Before a loan servicer has an obligation to respond to a borrower under this provision, a loan servicer must receive a QWR. 12 U.S.C. § 2605(e)(1)(A). A QWR is a:

> written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B); *see Layne v. Ocwen Loan Servicing, LLC*, No. 4:17–CV–4, 2018 WL 1524608 (E.D. Tenn. Mar. 28, 2018).

8

These two letters do not meet the statutory definition of a QWR. The September 14, 2015, letter asks Defendant to speak to Plaintiff's advocate so that the mortgage issue can be resolved. [Doc. 37–17, PageID 152]. This does not meet the definition of QWR because it does not include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error" and does not seek information from Defendant. 12 U.S.C. § 2605(e)(1). Likewise, the January 4, 2018, document is not a QWR. The January 4, 2018, document is a payment receipt and does not request any information. [Doc. 37–27]. Therefore, these documents do not meet the statutory definition of a QWR.

Having concluded that Plaintiff may not recover under RESPA regarding six letters, that leaves two more, the August 17, 2015 and February 9, 2018 letters. Defendant argues that these should be dismissed because Plaintiff has not provided any evidence of damages arising from the RESPA violations. [Doc. 60, PageID 278].

RESPA claims can be brought to recover numerous types of damages, and Plaintiff has pleaded legitimate damages under RESPA. *Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012). The Sixth Circuit has recognized that actual damages under RESPA could include "financial and emotional damages," foreclosure, "stress, mental anguish, embarrassment, and humiliation . . . . " *Id.* RESPA damages can also include statutory damages for a pattern or practice of violation. § 2605(f)(1)(B).

Defendant argues that Plaintiff cannot establish actual damages because "blanket statement does not sufficiently allege actual damages, as Driskill does not attempt to connect any purported harm to Regions' alleged failure to respond" and "Driskill cannot establish actual damages because the allegations and the evidence clearly demonstrate that she did not have the financial means to reinstate the loan." [Doc. 60, PageID 279]. However, Defendant's statements are incorrect. In fact,

9

the August 17, 2015 letter states that an agency was willing to bring her mortgage current, but it needed a breakdown of the balance, meaning she could reinstate the loan. [Doc. 37–16]. Further, she may be entitled to damages that she has explicitly requested caused by the alleged RESPA violations, including attorneys' fees. Plaintiff has also provided a computation of damages that requests $41,524.31 in lost equity, compensatory, consequential, and incidental damages, punitive damages, interest, and attorneys' fees and costs of at least $3,917. [Doc. 63, PageID 369]. Therefore, the Court cannot dismiss the claims based on the August 17, 2015 and February 19, 2018 letters based on Plaintiff's alleged inability to establish damages.

>   b. <u>Plaintiff's claim for failure to confirm termination of force-place insurance and to credit force-placed insurance premium pursuant to § 2605(l)(3) is DISMISSED.</u>

Plaintiff's next claim under RESPA is for failing to confirm the termination of force-placed insurance and crediting back insurance premiums in violation of § 2605(l)(3). Plaintiff claims that she notified Defendant that she purchased insurance, but it still charged her for insurance from January 15, 2013 to July 31, 2013. [Doc. 37, PageID 107, 115]. Section 2605(l)(3) of RESPA states:

> Within 15 days of the receipt by a servicer of confirmation of a borrower's existing insurance coverage, the servicer shall (A) terminate the force-placed insurance; and (B) refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance during such period.

Defendant argues that even if true, this claim must also fail because of the three-year statute of limitations for § 2605 claims previously discussed. [Doc. 60, PageID 276–77]. Defendant is correct. Even accepting the pleadings as true, these violations would have occurred over three years before the Complaint was filed on March 13, 2018. [Doc. 2]. Therefore, this claim must be dismissed.

c. Plaintiff's claim that Defendant charged unreasonable rates for force-placed insurance is DISMISSED.

Third, Plaintiff claims that Defendant charged unreasonable rates for force-placed insurance in violation of 12 U.S.C § 2605(m) between August 7, 2012, and January 14, 2013. [Doc. 37, PageID 116]. Defendant argues that this claim must be dismissed because 12 U.S.C. § 2605(m) was not in effect at the time of the alleged violation. [Doc. 60, PageID 275].

In 2010, Section 1400 of the Dodd–Frank Act amended RESPA to include § 2605(m). Dodd–Frank Wall Street Reform and Consumer Protection Act, PL 111–203, July 21, 2010, 124 Stat 1376. The Dodd–Frank Act says that the amendment "shall take effect on the date on which the final regulations implementing such section, or provision, take effect[,]" or if regulations have not been made, then the effective date would be "18 months after the designated transfer date . . . ." [*Id.*]. The transfer date was designated as July 21, 2011. Designated Transfer Date, 75 FR 57252–02, 2010 WL 3616738 (September 20, 2010). Considering this section "does not require the implementation of regulations[,]" the latter date applies to the effective date. *Williams v. Wells Fargo Bank N.A.*, No. 11–21233-CIV, 2011 WL 4368980, at *6 (S.D. Fla. Sept. 19, 2011).

Because the date of transfer is July 21, 2011, this code section became operative on January 21, 2013—after the date of the alleged violations. *See Galliard v. USAA Fed. Sav. Bank*, No. 12–CV–11459, 2012 WL 13012620, at *11 (E.D. Mich. Nov. 15, 2012). Given that this section of RESPA was not in effect at the time Defendant allegedly force-placed insurance with unreasonable rates, Plaintiff's claim must fail.

d. Plaintiff's claim regarding failure to make live contact pursuant to 12 C.F.R. § 1024.39(a) is DISMISSED.

Plaintiff's last claim under RESPA is for failure to make live contact pursuant 12 C.F.R. § 1024.39(a). This regulation requires a loan servicer to:

establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent. Promptly after establishing live contact with a borrower, the servicer shall inform the borrower about the availability of loss mitigation options, if appropriate.

12 C.F.R. § 1024.39(a).

This claim must be dismissed because, even assuming Defendant failed to follow this regulation, the regulation does not provide a private right of action. *Vallier v. Nationstar Mortg., LLC*, No. CV H–17–0998, 2018 WL 1319166, at *5 (S.D. Tex. Feb. 1, 2018), *report and recommendation adopted*, No. 4:17–CV–0998, 2018 WL 1322247 (S.D. Tex. Mar. 13, 2018) (citing *Solis v. U.S. Bank, N.A.*, No. CV H–16-00661, 2017 WL 4479957, at *3 (S.D. Tex. June 23, 2017), *aff'd*, 726 F. App'x 221 (5th Cir. 2018). *Compare* 12 C.F.R. § 1024.39 *with* 12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."). Given that 12 C.F.R. § 1024.39 does not provide a private right of action for Plaintiff to recover from Defendant, Defendant's motion as to this claim is granted.

    e.  <u>Defendant's Motion as to the breach of contract claim is DENIED.</u>

Defendant argues that the Court should dismiss the breach of contract claim because Plaintiff cannot show that Defendant breached their contract since it fully complied with the terms of the note and deed of trust. [Doc. 60, PageID 279–80].

Under Tennessee law, for a breach of contract claim, "claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). Tennessee law recognizes an implied covenant of good faith and fair dealing, which " has two purposes: (1) it honors the contracting parties' reasonable expectations; and (2) it protects the rights of the parties to receive the benefits of the agreement they entered into." *Upperline Equip.*

*Co. v. J & M, Inc.*, 724 F. Supp. 2d 883, 892 (E.D. Tenn. 2009) (citing *Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citations omitted)).

Plaintiff's Amended Complaint alleges that Defendant breached the contract by failing to correct its records, by failing to follow federal law, failing to properly apply payments, and failing to respond to letters. Defendant denies that it breached the contract at all. [Doc. 60, PageID 279–80].

The Court cannot grant Defendant's motion because there is a disputed fact regarding performance of the contract. [Doc. 37, PageID 117]. While the interpretation of a contract is a matter of law, performance under the contract is a question of fact. *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225 (Tenn. Ct. App. 2009). The deed of trust establishes how payments were to be applied: (1) prepayment charges, (2) amounts payable to escrow, (3) interest, (4) principal, and (5) late charges. [Doc. 62–2, PageID 310]. Plaintiff's claim focuses on the misapplication of payments in accordance with their agreement, and Defendant argues that it did not misapply payments. Both Parties provided documentation that supports their arguments, and all the documents appear to have been originally produced by Defendant. Not only do the documents provide different amounts owed by Plaintiff, the documents appear to apply the payments differently, even though the deed of trust required the payments to be applied in a particular way.

Based on the evidence in the record, finding summary judgment for either Party would be improper as it would require the Court to weigh the evidence in the record to determine if Defendant breached the contract. The Parties will have to resolve this question of fact at trial.

13

## VI. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment, [Doc. 59], is GRANTED in part and DENIED in part. Defendant's Motion is DENIED as to claims brought pursuant to violation of 12 U.S.C. § 2605(e) for the August 17, 2015 and February 9, 2018 letters, and the breach of contract claim. All other claims are DISMISSED.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE